IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN H. HAROLD | ) | CASE NO. 1:04CV01281 |
| | ) | |
| Plaintiff, | ) | MAGISTRATE JUDGE HEMANN |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES OF AMERICA, | ) | **MEMORANDUM OF OPINION** |
| | ) | |
| Defendant. | ) | Docket #16 |

This case is before the magistrate judge on consent. Pending is the motion of defendant, United States of America ("United States"), for summary judgment ( Docket #16) on its counterclaim against plaintiff, John H. Harold ("Harold"). Harold opposes this motion (Docket #17). For the reasons stated below, the court grants defendant's motion.

I

Harold brought this suit seeking a refund of monies collected by the Internal Revenue Service ("IRS") and an abatement of the remaining payroll taxes assessed against him for the three quarters of September 30, 1996 through March 31, 1997.

The relevant facts are as follows. From 1987 to 1997 Harold was the store manager and treasurer of Harold's Sparkle Market Inc. ("Harold's Market"). Harold's father, Robert Harold, Sr. ("Harold, Sr."), owned this local grocery store. Sandra West ("West") was the accountant for Harold's Market. West prepared the weekly payroll and payroll tax checks.

1

West delivered the checks to Harold's Market to either Harold or the front office manager, Wendy Blitz ("Blitz"). West prepared the payroll tax checks based upon the payroll records received from either Harold or Blitz.

Harold, Sr. worked at Harold's Market a couple of days a week for a couple of hours each time. Harold, Sr. had check writing authority. At times he would authorize a deposit to be made into the payroll account from the general account to cover payroll and payroll taxes. Blitz also had check writing authority. She would often write a check from the general account to cover payroll and payroll taxes.

Harold, as the store manager and treasurer of Harold's Market, was responsible for the overall operations of the store. He hired and fired employees, paid vendors, ordered supplies, and worked 60 to 70 hours a week. Harold had check writing authority. He signed checks to pay bills, including tax bills. He also made some deposits to cover payroll and payroll taxes.

During the early to mid 1990's, a large grocery store opened near Harold's Market. As a result, Harold's Market was losing customers and experiencing declining sales. The daily cash receipts that Blitz deposited in the store's bank account gradually decreased. At some point, Blitz and Harold, Sr. informed Harold that tax deposits were not being made. Harold assumed that if the money was not available then, it would be there the next day or week. He did not follow up to see if the taxes were paid.

In 1995 and 1996 Harold's Market had payroll tax delinquencies. According to West, Harold, Sr. and Harold informed her that they were receiving notices from the IRS about the unpaid payroll taxes. In early 1996, Harold's Market wanted to obtain a bank loan to renovate the store. The bank would not approve the loan because of the federal

2

and state tax liens that encumbered the property. Harold personally borrowed tens of thousands of dollars to pay Harold's Market's delinquent payroll taxes and other debts. With the liens removed, Harold, Sr. obtained the loan, but Harold's Market was never renovated.

From July 1996 to March 1997 Harold's Market continued to experience declining business. A number of Harold's Market's checks were not being honored at the bank. Consequently, instead of paying vendors and suppliers with checks, Harold's Market was required to pay them with cash. Harold's Market could not buy all the groceries, meats, and others store products it had normally purchased because of the lack of funds. Employees' payroll checks were sometimes not honored by the bank due to insufficient funds.

Harold knew the store had a shortage of money. In an effort to reduce expenses, Harold cut the number of working hours of employees and ordered a smaller number and fewer types of products. Harold continued to make deposits into the company's payroll account. When he did not make the deposits, he assumed that the payroll deposits were made by either Harold, Sr. or Blitz. Harold was aware that many of Harold's Market's checks were not being honored due to insufficient funds. However, Harold did nothing to investigate whether payroll taxes were actually being paid.

Harold, Sr. died in the late part of January 1997. According to West, after Harold, Sr.'s death and during the time period in which Harold's Market remained open for business, Harold told her that he received notices from the IRS. Harold continued to run Harold's Market until it was closed in approximately March 1997. After Harold's Market closed, Harold liquidated the store and received somewhere between $60,000 and $80,000

3

from the liquidation of assets. After liquidating the store, Harold did nothing to investigate whether payroll taxes had been paid.

On or about August 3, 1998 a delegate of the Secretary of the Treasury made an assessment against Harold pursuant to 26 U.S.C. § 6672 ("§ 6672"). The assessment was for the trust fund[1] portion of taxes withheld from the wages of the employees of Harold's Market from September 30, 1996 through March 31, 1997 in the amount of $24,625. Harold brought this suit seeking a partial refund of monies paid or collected by the IRS and an abatement of the remaining assessment made against him. The United States counterclaimed against Harold to reduce to judgment the outstanding balance of the assessment, which as of June 20, 2005 was $35,375 plus statutory accruals.

II

Summary judgment is appropriate only when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U. S. 317 (1986). The substantive law of the case identifies which facts are material. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The moving party must demonstrate to the court through reference to pleadings and discovery responses the absence of a genuine issue of material fact. *Id.* at 323. The nonmoving party must then show the existence of a material fact which must be tried. *Id.* at 324.

When evaluating a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to . . . the party

---

[1] "Trust fund taxes" are those which "any person is required to collect or withhold ... from any other person and to pay over ... to the United States ...." 26 U.S.C. § 7501(a). Such taxes are said to be held "in trust" for the United States. These include income and FICA taxes.

4

opposing the motion . . . ." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *see also Poller v. Columbia Broad. Sys., Inc.*, 368 U.S. 464, 473 (1962); *Aetna Ins. Co. v. Loveland Gas & Elec. Co.*, 369 F.2d 648 (6th Cir. 1966). This includes taking the nonmoving party's uncontradicted allegations as true and giving the benefit of the doubt to the nonmoving party's assertions when they conflict with those of the movant. *Bishop v. Wood*, 426 U.S. 341 (1976); *Bosely v. City of Euclid*, 496 F.2d 193, 197 (6th Cir. 1974).

The court's treatment of facts and inferences in a light favorable to the nonmoving party does not relieve that party of its obligation "to go beyond the pleadings" to oppose an otherwise properly supported motion for summary judgment under Rule 56(e). *See Celotex*, 477 U.S. at 324. The nonmoving party may oppose a proper summary judgment motion "by any of the kinds of evidentiary material listed in Rule 56(c), except the mere pleadings themselves. . . ," *id.*, or by any other evidentiary material admissible at trial. *Horta v. Sullivan*, 4 F.3d 2, 8 (1st Cir. 1993); *see also* CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, 10A, § 2721 (1998). Conclusory allegations of an affidavit do not create specific fact disputes for summary judgment purposes. *Lujan v. National Wildlife Fed'n*, 497 U.S. 871 888-89 (1990). There must be enough evidence that a reasonable jury could find for the nonmoving party. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).

III

Sixth Circuit law relevant to the issues in this case is well summarized in *Collins v. United States*, 848 F.2d 740, 741-42 (6th Cir.1988):

> Under 26 U.S.C. § 6672(a), a person is personally liable for unpaid taxes withheld from the earnings of employees if he is an officer or an employee

of a corporation who is under a duty to collect and pay over the taxes to the government and willfully fails to do so. Taxes withheld from the wages of an employee are held by the employer in trust for the government. 26 U.S.C. § 7501(a). These trust fund taxes are for the exclusive use of the government and cannot be used to pay business expenses of the employer, including salaries. *Gephart v. United States,* 818 F.2d 469, 472 (6th Cir. 1987). It is no excuse that, as a matter of sound business judgment, the money was paid to suppliers and for wages in order to keep the corporation operating as a going concern–the government cannot be made an unwilling partner in a floundering business. See*Thibodeau v. United States,* 828 F.2d 1499, 1506 (11th Cir.1987).

The clear intent of Congress, as expressed in 26 U.S.C. § 6672(a), was that the person responsible for paying these trust fund taxes over to the government should be personally liable for their diversion. *Spivak v. United States,* 370 F.2d 612, 615 (2d Cir.), *cert. denied,* 387 U.S. 908, 87 S.Ct. 1690, 18 L.Ed.2d 625 (1967). The assessment, although collectible in the same manner as other taxes, is expressed as a "penalty" against the responsible person for his failure to carry out the duties imposed upon him by the statute. *See* 26 U.S.C. § 6672(a). Despite its denomination as a "penalty" assessment, the statutory liability imposed by 26 U.S.C. § 6672(a) is civil in nature. *Gephart,* 818 F.2d at 473. When a person who pays part of a penalty assessed against him under 26 U.S.C. § 6672(a) for failure to pay over withheld taxes, files suit for refund of the portion paid, and the government counterclaims for the balance of the assessment, the person has the burden of showing that the assessment is inaccurate or erroneous. This is because he has placed at issue an assessment which is presumed correct. See *Avco Delta Corp. v. United States,* 540 F.2d 258, 262 (7th Cir.1976), *cert. denied sub nom. Canadian Parkhill Pipe Stringing Ltd.,* 429 U.S. 1040, 97 S.Ct. 739, 50 L.Ed.2d 752 (1977). His burden includes proving, by a preponderance of the evidence, that he was not a responsible person who willfully failed to pay over the withheld taxes. *Calderone v. United States,* 799 F.2d 254, 258 (6th Cir.1986); *Sinder v. United States,* 655 F.2d 729, 731 (6th Cir.1981).

A. *Responsible person*[2]

The test for determining the responsibility of a person under § 6672 focuses upon

> the degree of influence and control which the person exercised over the financial affairs of the corporation and, specifically, disbursements of funds and the priority of payments to creditors. . . .

---

[2] In opposing the motion for summary judgment plaintiff has limited his argument to the single issue of whether he is a responsible person under the statute.

> Among the specific facts which courts have relied upon in determining whether individuals were persons responsible for the payment of taxes withheld from the wages of employees are: . . . (2) the ability of the individual to sign checks of the corporation; . . . (4) the identity of the individuals who hired and fired employees; (5) the identity of the individuals who were in control of the financial affairs of the corporation.
>
> More than one person can be a responsible officer of a corporation. Essentially, liability is predicated upon the existence of significant, as opposed to absolute, control of the corporation's finances. It is basically a factual inquiry. Generally, such a person is one "with ultimate authority over expenditure of funds since such a person can fairly be said to be responsible for the corporation's failure to pay over its taxes," or more explicitly, one who has "authority to direct payment of creditors."

*Gephardt v. United States*, 818 F.2d 469, 473 (6th Cir. 1987)(citations omitted).

In the instant case, Harold, as store manager and treasurer had significant authority over Harold's Market's financial affairs. He was responsible for the overall operations of the store. He paid vendors, ordered supplies, and worked 60 to 70 hours a week. He also hired and fired employees. He had check writing authority. He signed checks to pay bills and made deposits in the company's payroll account. Harold took the responsibility of borrowing money to pay back taxes for 1995 and 1996. He had knowledge of the status of monies owed, and paid, by Harold's Market. Because Harold had check signing authority, hired and fired employees, and had control over the financial affairs of Harold's Market, the court concludes that Harold was a responsible person.[3]

B. *Willfulness*

"[F]or nonpayment to be willful there must be either knowledge of nonpayment *or*

---

[3] Plaintiff argues in his brief that he was not a responsible person because Harold, Sr. was responsible for payroll taxes. Although Harold, Sr. and Blitz may have been responsible persons under § 6672, Harold was also a responsible person. Moreover, because Harold was in charge of paying suppliers and vendors he arguably had the most authority to direct payments to creditors.

*reckless disregard* of whether payments are being made." *Calderone v. United States,* 799 F.2d 254, 259 (6th Cir. 1986)(quoting *Teel v. United States,* 529 F.2d 903, 905 (9th Cir. 1976)). A failure to pay over taxes is willful, for section 6672 purposes, if a responsible person "makes a deliberate choice to voluntarily, consciously, and intentionally pay other creditors rather than make tax payments." *Collins,* 848 F.2d at 742; *see also Calderone,* 799 F.2d at 259. Willful conduct may also include a reckless disregard for obvious or known risks. *Id.* at 259-60. "More than mere negligence is required for 'willfulness'; a person is not willful if as a result of negligence he is unaware of the default in the payment of payroll taxes. . . ." *Id.* at 259 (citation omitted). However, a reckless disregard of the facts and known risks that taxes were not being paid is sufficient to hold a responsible party liable. *Id.*

In the instant case, although Harold may have lacked actual knowledge[4] of the nonpayment of trust fund taxes, the court concludes that he acted with reckless disregard as to whether such taxes were being paid. Between July 1996 and March 1997 Harold was aware that Harold's Market was in dire financial straits. He knew the store had insufficient funds to cover checks. He was aware of Harold's Market's prior payroll tax problems. He knew that the IRS was sending notices to Harold's Market. He was aware that employees' payroll checks were sometimes not being honored by the bank due to a lack of funds. Yet he did nothing to make sure that the payroll taxes were being paid. Instead, he assumed that the deposits were made by either Harold, Sr. or Blitz. Because

---

[4] This court doubts that plaintiff lacked actual knowledge as to whether payroll taxes were being paid. However, for the purposes of this motion we will proceed only with the analysis of whether Harold recklessly disregarded the obvious risk that taxes were not being paid.

Harold did not investigate whether trust fund taxes were being paid, Harold recklessly disregarded the obvious risk that such taxes were not being paid. Instead, he used the available trust fund taxes to pay the store's operating expenses. This constitutes reckless and hence willful conduct.

Harold's conduct was especially willful between January 1997 and March 1997. After Harold, Sr.'s death and during the time period in which Harold's Market remained open for business, Harold told West that he received notices from the IRS. Even assuming that he did not open this mail, the failure to investigate whether payroll taxes had been paid was reckless in light of the obvious risk that such taxes had not been paid. Because Harold received liquidation funds subsequent to receiving notices from the IRS and did not use these funds to pay trust fund taxes, this conduct was reckless and hence willful.

IV

For the above stated reasons, the Motion for Summary Judgment filed by the United States is granted. Defendant is to submit a verified statement of monies due and owing as of the date of this Order. The parties shall apprise the court in writing of the status of the plaintiff's claim for a setoff, i.e., whether the government agrees that plaintiff is entitled to have any monies set off against the amount owed.

**IT IS SO ORDERED.**

Date: July 21, 2005

/s/Patricia A. Hemann
Patricia A. Hemann
United States Magistrate Judge

9